UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ROBIN GUNN,<br><br>Plaintiff,<br><br>v.<br><br>KNOX COUNTY, TENNESSEE; and TIMOTHY IRWIN,<br><br>Defendants. | ) | 3:25-CV-415-KAC-JEM |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on the (1) Motion to Dismiss filed by Defendant Judge Timothy Irwin [Doc. 26] and (2) Motion to Dismiss filed by Defendant Knox County, Tennessee [Doc. 28]. The Court grants each Motion in part and denies each Motion in part, for the reasons set forth below. Only the Section 1983 equal protection claim survives.

## I. Background

This case arises out of the termination of Plaintiff Robin Gunn's employment. Plaintiff is a "Black woman" [Doc. 24 at 2]. She "served as a Juvenile Court Magistrate Judge in Knox County Juvenile Court from August 2017 until" September 16, 2024 [*Id.*].

While working at the Juvenile Court, Plaintiff attended "monthly" meetings about the court's function where she "regularly spoke out . . . against unwritten court policies that she believed violated due process, the right to counsel, and other constitutional protections under the U.S. and Tennessee Constitutions" [*Id.* at 3-4]. She believed the policies "violate[d] the Fourteenth Amendment procedural due process rights of parents" and "their First Amendment right to petition" [*Id.* at 9]. She "raised many [of] these issues directly with Defendant Irwin" [*Id.* at 10].

On August 22, 2024, Plaintiff issued an order "to remove three children from the custody of their father" [*Id.* at 11]. The next day, Plaintiff learned that the father fled with the children [*See id.*]. Law enforcement issued an "Endangered Child Alert to locate the children and their father" [*See id.*]. "Plaintiff was informed" that the father was in Chattanooga and had "arranged to surrender the children voluntarily" that "evening" [*Id.*]. "Concerned about the traumatic and potentially dangerous impact of the alert during the family's return trip to Knoxville," Plaintiff issued an "Order Requesting Removal of Endangered Child Alert" on August 23 [*See id.*; Doc. 24-1].

Defendant Judge Irwin, "the elected Judge of the Knox County Juvenile Court," "summoned" Plaintiff to his office about "30 minutes later" [Doc. 24 at 2, 12]. He "admonished" Plaintiff, "stating words to the effect of 'You don't get to tell the police department how to do their job,'" and "asked why" she "would think she could order the police to do anything" [*Id.* at 12]. Judge Irwin "insisted that he would prepare an order to set aside" Plaintiff's Order [*Id.*].

On August 29, 2024, Defendant Judge Irwin "formally reprimanded" Plaintiff, placing her "on probation for six months" [*See id.*]. On September 4, 2024, Plaintiff met with Defendant Judge Irwin again [*Id.* at 13]. Defendant Judge Irwin had spoken with local law enforcement and "counsel for the Knox County Sheriff's Department" about Plaintiff's Order [*Id.*]. Defendant Judge Irwin "learned" that a Knoxville Police Department sergeant was "fuming" and "asking 'what are we going to do'" in response to reviewing the Order [*See id.*].

On September 16, 2024, Defendant Judge Irwin terminated Plaintiff's employment [*See id.* at 14]. Since then, "Defendants have stated in official EEOC filings and in off-the-record remarks that her removal was prompted by backlash from the Sheriff's Office and other law enforcement personnel" [*Id.* at 15]. And "Knox County explicitly stated in its EEOC response to Ms. Gunn's

charge of discrimination that Judge Irwin terminated Ms. Gunn because he perceived the Order Requesting Removal of Endangered Child Alert as 'threaten[ing] the relationship of trust and goodwill between the Juvenile Court and 'its law enforcement partners'" [*Id.* at 24 (alterations and typographical error in original); *see* Doc. 24-2 at 1 (attached to the complaint and incorporated)].

Plaintiff filed suit against Defendants [*See* Doc. 1]. The operative First Amended Complaint raises three claims [*See* Doc. 24]. ***First***, Plaintiff raises a Section 1983 claim against Defendants for "The Court Control Conspiracy to Violate Constitutional Rights" (Count One) [*See id.* at 17]. The claim is based on an alleged conspiracy among Defendants and others to create a "system" "systematically erecting unlawful procedural barriers to reunification, circumventing due process, and enabling law enforcement to exert improper, ex parte influence over judicial decisions at the expense of parents' constitutional rights" [*Id.* at 18]. Allegedly, "Plaintiff would not have been terminated, and the conspirators would not have engaged in the conduct described above, if she were white" [*Id.* at 20].

***Second***, Plaintiff raises a Section 1983 claim against Defendants for a "Violation of the Fourteenth Amendment Right to Equal Protection" (Count Two) [*See id.* at 21]. The First Amended Complaint alleges that Plaintiff was discriminated against "on the basis of race" [*Id.*]. To support this claim, the First Amended Complaint identifies two examples of "white" individuals who allegedly committed acts similar to Plaintiff but "were not disciplined, much less terminated" [*See id.* at 15]. A "White magistrate judge[]" allegedly stated "words to the effect of 'I won't spank you in front of everybody' in reference to a female clerk" in his courtroom [*See id.* at 15-16]. "Upon information and belief, Defendant Irwin was personally aware of" the "inappropriate behavior" [*Id.* at 16]. And "white" "Knox County Juvenile Court's IV-D Child Support magistrate judges" "continued to conduct in-person proceedings" after the Tennessee

Supreme Court "entered a series of Orders . . . which suspended in-person proceedings with limited exceptions" during COVID-19 [*Id.* at 16-17]. This "constitutes a violation of the Knox County Juvenile Court's policies" [*Id.* at 17]. "Judge Irwin knew that these Knox County Juvenile Court child support proceedings were being held in-person" [*Id.*]. Each of these individuals was "subject to the same decisionmaker—Defendant Irwin" [*Id.* at 22].

***Third***, Plaintiff raises a state law claim against Defendant Knox County for a "Violation of the Tennessee Public Protection Act" ("TPPA") (Count Three) [*See id.* at 22]. For this claim, Plaintiff alleges that she "refused to participate in, and repeatedly refused to remain silent about" "illegal conduct taking place within" the Juvenile Court [*Id.* at 23]. Plaintiff sues Defendant Judge Irwin in his individual capacity, and she seeks monetary relief from Defendants [*See id.* at 2, 25].

Each Defendant filed a motion to dismiss the claims against it [*See* Docs. 26, 28]. Plaintiff responded [Docs. 39, 30]. And each Defendant replied [Docs. 47, 48].

## II. Analysis

To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court views the First Amended Complaint in the light most favorable to Plaintiff, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in her favor. *See Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 683 (6th Cir. 2024) (citation omitted). But the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice" to state a claim. *See Willman v. U.S. Att'y Gen.*, 972 F.3d 819, 823 (6th Cir. 2020) (cleaned up)

The Court addresses each claim, seriatim, starting with Count One. Plaintiff has not shown

that she has standing to raise this Section 1983 conspiracy claim. Under Article III, this Court may only hear actual "Cases" and "Controversies." U.S. Const. art. III, § 2. A critical component of that requirement is "standing." *See Ames v. LaRose*, 86 F.4th 729, 731-32 (6th Cir. 2023). Plaintiff must have standing for "each claim" she "press[es]." *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). For each claim, then, she "must show that she has suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *See id.* at 57 (cleaned up). Prudentially, too, a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Henry v. Blank*, 167 F.4th 375, 381 (6th Cir. 2026) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Here, the First Amended Complaint fails to allege facts showing that the alleged injury to Plaintiff, her "terminat[ion]," is "fairly traceable to" the alleged conspiracy to violate "parents' constitutional rights" [*Id.* at 18, 20]. The "conclusory allegation[]" that Plaintiff "suffered the violation of her constitutional rights" "[a]s a direct and proximate result of the Defendants' conspiracy," [*see* Doc. 24 at 21], will not do, *see Willman*, 972 F.3d at 823. Nor will an unadorned statement that "the conspirators would not have engaged in the conduct" if Plaintiff "were white" [*See* Doc. 24 at 20]. The law requires facts. And the First Amended Complaint fails to allege facts establishing that Plaintiff has standing to raise Count One.

But even if it did, the First Amended Complaint fails to state a claim. To state a Section 1983 conspiracy claim, a complaint must allege facts showing that "at least two people" "agreed to a 'single plan' ***to deprive the plaintiff of rights protected by § 1983***." *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 887 (6th Cir. 2024) (cleaned up). "To get past the pleading stage on a conspiracy claim, a complaint must assert 'specific allegations' that plausibly suggest" each

element. *Id.* (citation omitted). Here, the First Amended Complaint fails. It does not allege that Defendants conspired to deprive Plaintiff of a constitutional right [*See* Doc. 24]. Instead, Defendants allegedly conspired to deprive parents of their constitutional rights and somehow that purportedly led to Plaintiff being harmed [*See* Doc. 24 at 21]. That is not sufficient to state a Section 1983 conspiracy claim[1] under the law.

Plaintiff's Section 1983 equal protection claim (Count Two), in contrast, is on sound legal footing and fairs better. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry*, 167 F.4th at 380 (citation omitted). In published precedent, the Sixth Circuit has used the *McDonnell Douglas* framework to analyze these claims. *See, e.g.*, *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). The Parties use that framework too [*See* Docs. 27 at 20, 28 at 4, 39 at 20]. The First Amended Complaint alleges that Plaintiff was discriminated against based on her race [*See* Doc. 24 at 21]. Defendants challenge whether the First Amended Complaint sufficiently alleges that Plaintiff "was actually treated differently from similarly situated employees" who were "white" [Doc. 27 at 20, 28 at 4]. It does.

Accepting the Parties' legal frame, the First Amended Complaint alleges just enough facts to allow the Court to infer that she was treated differently than other similarly-situated "white" magistrate judges. To start, each of the alleged comparators was a magistrate judge, like Plaintiff, and "subject to the same decisionmaker—Defendant Irwin" [*See* Doc. 24 at 15-17, 22]. Each either engaged in questionable conduct or violated a Juvenile Court policy, like Plaintiff [*See id.* at 16, 17]. And Defendant Irwin was allegedly aware of each "white" magistrate judge's actions

[1] The First Amended Complaint mentions "retaliat[ion]," [Doc. 24 at 20], but Plaintiff, who has counsel, does not raise a Section 1983 retaliation claim, [*see* Doc. 24].

but did not discipline him or her [*See id.* at 15, 16, 17]. This is enough under the law to survive at the motion to dismiss stage. *See, e.g.*, *James*, 592 F. App'x at 461. And because the right not to be discriminated against based on race was clearly established in 2024, Defendant Judge Irwin is not entitled to qualified immunity. *See, e.g.*, *Farm Lab. Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 541 (6th Cir. 2002).

Finally, the TPPA claim against Defendant Knox County fails. Tennessee is an at-will employment state. *Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 527 (Tenn. Ct. App. 2006). But the TPPA provides a limited carveout—"[n]o employee shall be discharged or terminated ***solely for*** refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b) (emphasis added). The alleged protected activity must be the "sole reason" for Plaintiff's termination. S*ee Hugo v. Millennium Lab'ys, Inc.*, 590 F. App'x 541, 544 (6th Cir. 2014) (citing *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002) (emphasis omitted)). The First Amended Complaint must plead facts showing an "exclusive causal relationship between" Plaintiff's "refusal to participate or remain silent about illegal activities" and her "termination." *See Franklin*, 210 S.W.3d at 528. That burden is "formidable." *See Darnall v. A+ Homecare, Inc.,* No. 01-A-01-9807-CV-00347, 1999 WL 346225, at *5 (Tenn. Ct. App. June 2, 1999). And Plaintiff fails to meet it here.

The facts in the First Amended Complaint, taken as true, belie even the conclusory assertion that Plaintiff was terminated "solely because of her protected activity" [*See* Doc. 24 at 24]. The complaint is replete with facts showing that Defendant Knox County decided to terminate Plaintiff, at least in part, because of the disharmony with local law enforcement and decisionmaker Judge Irwin that was created when Plaintiff issued her August 23 Order [*See* Doc 24 at 12, 15, 24]. Not the least of which is Defendant Knox County's own statement that "Judge Irwin terminated

Ms. Gunn because he perceived the Order Requesting Removal of Endangered Child Alert as 'threaten[ing] the relationship of trust and goodwill between the Juvenile Court and 'its law enforcement partners'" [*See id.* at 24]. Other allegations in the First Amended Complaint show the disharmony created by the Order too. For example, Judge Irwin promptly admonished Plaintiff that she does not "'get to tell the police department how to do their job'" and rescinded the Order [*See id.* at 12]. He issued a formal "reprimand" and placed Plaintiff "on probation for six months" because of the Order [*Id.* at 12]. He then learned that a local law enforcement officer was "fuming" after reviewing the Order [*Id.* at 13]. And less than three (3) weeks later, Defendant ended Plaintiff's employment [*See id.* at 14]. Accordingly, the First Amended Complaint fails to allege facts showing that purported protected activity was the "sole reason" for Plaintiff's termination. And the claim fails.

## III. <u>Conclusion</u>

For the above reasons, the Court (1) **GRANTS** Defendant Timothy Irwin's Motion to Dismiss [Doc. 26] **in part** and **DENIES** it **in part** and (2) **GRANTS** Defendant Knox County's Motion to Dismiss [Doc. 28] **in part** and **DENIES** it **in part**. Only the Section 1983 equal protection claim survives.

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge